UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
MAR 13 2014

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| EKUETA PALEGA, a/k/a "Q" PALEGA, <br><br> Petitioner, <br><br> -vs- <br><br> UNITED STATES OF AMERICA, <br><br> Respondant. | CIV 10-3014 <br> CR 07-30010-01 <br><br> ORDER ON <br> REPORT AND RECOMMENDATION |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Background

Petitioner was convicted of conspiracy and possession of methamphetamine with intent to distribute and was sentenced to 230 months of custody. The United States Court of Appeals for the Eighth Circuit affirmed his conviction and sentence on February 19, 2009. United States v. Palega, 556 F.3d 709 (8th Cir. 2009). Petitioner filed a motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. He alleges eleven instances of ineffective assistance by his two attorneys, Attorney Jana Miner and Attorney Edward Albright.

I submitted the above-entitled matter to U.S. Magistrate Judge William D. Gerdes and the magistrate judge submitted his report and recommendation on January 9, 2014, Doc. 58. The report and recommendation was served on the petitioner as required by 28 U.S.C. § 636. Petitioner timely filed objections. I have conducted a *de novo* review of the file.

## Opinion

The question before the court is whether the defendant, now petitioner, Ekueta Palega, a/k/a/ "Q" Palega, received ineffective assistance of counsel in the defense of his criminal prosecution. "As all the Federal Courts of Appeals have now held, the proper standard for attorney performance is that of reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). Under what

has become known as the "Strickland Test," a petitioner must show that his ineffective assistance of counsel was professionally deficient and that this deficient performance prejudiced him. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The Sixth Amendment relies "on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfil the role in the adversary process that the Amendment envisions." Id. at 688.

As the judge who presided over the trial of this case, I remember the case quite well. At one time, before the deluge of illegal immigration cases in the border states, I had the third highest criminal case load of federal judges in the United States. Thus, I have forgotten at least the details in many of the cases that I have tried over the years. However, as stated, I do remember this case and most of the details.

Before taking office in 1995, I practiced law for thirty years, mostly as a trial lawyer. I represented the City of Aberdeen, South Dakota, for 17 years, doing all the trial and appellate work. Most of my practice was insurance defense work. I tried quite a few cases in state and federal courts. I observed counsel working on behalf of clients in a large number of cases. I was able to judge the merits of many lawyers and their skill levels. I had the highest rating from Martindale Hubbell, "A.V." I have also had the opportunity to observe many lawyers trying cases and arguing motions in U.S. District Court, both in the Northern Division and the Central Division. Since taking Senior Status, I have tried cases in North Dakota, Arizona, Missouri, New York and Connecticut.

I certainly have seen public defenders Miner and Albright "in action" countless times over the years. They have been always well prepared and provided first class defenses to clients going to trial. Their integrity as officers of the court has never been in question. This is not to say, of course, that either or both could not possibly have rendered inadequate assistance in this particular case. What I am saying is that no case can be judged in a vacuum, especially when I was the trial judge.

The first issue deals with the involvement of Magistrate Judge Moreno in answering a telephone call from officers making the arrest of the defendant. Judge

Moreno had issued the search warrant. Judge Moreno did nothing improper. He is a cautious judge and, out of an abundance of caution, would have recused from the suppression motion had the defendant requested recusal. The motion would then have gone before another magistrate or I could have decided to simply handle the motion myself without a report and recommendation. Regardless whether Judge Moreno was or was not going to be providing the report and recommendation, I was the ultimate decision maker. There was nothing wrong with the search warrant or the affidavit. Some of the evidence was somewhat stale but there was clearly a sufficient basis for issuing the search warrant.

I also agree completely with the analysis of attorney Miner that they had at least a "fair shot" with Judge Moreno making the report and recommendation rather than going to another magistrate. Judge Moreno carefully, in all cases that I have witnessed, considers whether the rights of a defendant have been violated and he is careful to see that they are not.

There was confusion at the scene of the arrest. The petitioner and his brother, Morris, were living at or operating out of the residence. When officers were descending on the house, the petitioner ran inside the house, disobeying commands to stop. Other people were also at the residence. Officers had had the house under surveillance for quite some time. They knew exactly where all the unusual activity had been occurring. The lack of a house number in the location where this house was is of no consequence. It would be highly unusual for a house to have a number displayed. This is not some metropolitan area.

Judge Gerdes, in the present report and recommendation, found that attorney Miner did timely discuss a possible recusal motion with petitioner. This is a credibility assessment from the judge who heard the evidence at the motion hearing and there is no reason to overturn it.

The claim of any prejudice to the petitioner in connection with the search warrant and the involvement of Judge Moreno has no merit. In addition, attorney Miner acted appropriately in her decisions.

While we are "on the subject," the claim of ineffectiveness in not raising the "recusal matter" on appeal to the United States Court of Appeals for the Eighth Circuit is without merit. Mr. Albright testified that he considered the issue but discarded it as being potentially frivolous. It would indeed have been frivolous. It is elementary that a defendant cannot, on appeal, challenge an issue never placed before either the magistrate judge or the district judge. Such "sandbagging" is almost never allowed.

Whether or not petitioner's niece or nieces were interviewed is of no consequence. The evidence found by the police during the search and arrest was highly incriminating. The fact that the nieces were also coming and going from the residence would not rule out drug activities which the officers believed were happening. In addition, the investigator (who is an attorney) for the public defenders did speak with the nieces and saw no value in calling them to testify. Assuming they had been called and testified to their visits to the Palega residence, the result of the trial would not have been difference in any way.

The alleged failure of petitioner's lawyers to try to speak to the co-defendants (all represented by counsel) and who had already decided to cooperate with the government and point the finger at Mr. Palega is not a failure at all. This was a rather typical drug conspiracy case where one or more defendants rush to the prosecutor's office to proffer evidence, agree to testify, and benefit from their cooperation. One would have to assume that the lawyers representing Max Jensen, John Farmer, and Philip Burnette would have been incompetent by agreeing to expose their clients to questioning from Palega's attorneys, knowing that Palega was likely going to trial and that they could be accused by the government of backing away from their agreements to cooperate. As we all know, the government ultimately makes the decision whether, in the opinion of the prosecutor, a particular defendant did cooperate sufficiently and in good faith, thus earning the motion for a reduction of sentence. Any competent defense lawyer would not take a chance on having the client accused of having not cooperated after having agreed to do so. All the claims of the petitioner are without legal merit as to these claims of failing to seek to

interview. There was no prejudice and the result of the trial would not have been different.

There was at one time some contention that the defendant was not commonly and routinely known as "Q." Apparently, any such claim has been abandoned. At trial, there was never any question that the defendant's nickname was "Q."

The magistrate did find the testimony of the attorneys more credible than that of Mr. Palega as to whether he was told about the hazards of going to trial. I find no reason to set aside such credibility assessment. This *de novo* review examined a letter written to Mr. Palega by his attorney Jana Miner. In the letter, attorney Miner took careful and deliberate steps to explain the federal criminal justice system to Mr. Palega in clear and plain language. Attorney Miner explained in particular how Mr. Palega's sentence would be calculated according to the Federal Sentencing Guidelines and warned Mr. Palega: "If you are convicted on drug charges in federal court, you can expect that your sentence will be severe." (Doc. 41). I find that Mr. Palega was told to not stand trial because the evidence against him was overwhelming and the penalties would be much higher than what could possibly result from a plea agreement. It turned out that the predictions of his attorneys were correct. Mr. Palega made the decision (unwise as it was) to not consider any plea agreement and to stand trial. His attorneys did nothing prejudicial.

The last issue deals with claimed ineffectiveness in failing to object to questions claimed to be leading. Petitioner's objections (Doc. 61) set forth the questions on pages 9 and 10. The questions are not necessarily leading. They are in the nature of "lead-in" questions. They could have been better phrased. If an objection had been made and sustained, the attorney would simply have asked the questions in a more open ended fashion and the answers would have been the same. The claim of Mr. Palega that, had the witnesses been allowed to testify in their own words, "there is a reasonable probability that the outcome would have changed . . ." is rejected. After all, the entire purpose of these three witnesses being present to testify about the heavy involvement of Mr. Palega in selling illegal substances was to gain favor with the government and to lessen the serious consequences to them. That is a powerful motive and incentive. They were

thoroughly and carefully cross examined by the public defender to disclose their motives and incentives to the jury and the jury nevertheless found their testimony credible and convicted Mr. Palega. There is not the slightest possibility that, in the absence of the challenged questions being reworded, Mr. Palega would not have been convicted. He would have been. Strickland requires that petitioner "affirmatively prove prejudice" to succeed on a claim alleging a deficient performance of counsel. Id. at 693. He has not done so. The evidence against Palega was overwhelming.

The motion (Doc. 1) should be denied. The report and recommendation (Doc. 58) should be adopted.

Now, therefore,

IT IS ORDERED, as follows:

(1) The report and recommendation (Doc. 58) is adopted.

(2) The objections of the petitioner (Doc. 61) are overruled.

(3) The motion of petitioner (Doc. 1) is denied.

Dated this 8th day of March, 2014.

BY THE COURT:

*[signature]*

CHARLES B. KORNMANN
United States District Judge

ATTEST
JOSEPH HAAS, CLERK

BY *[signature: Barbara J. Staeple]* Deputy
(SEAL)

6